UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Justin Mark, | Case No. 21-cv-1418 (KMM/DTS) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| B. Birkholz, et al., | |
| Respondents. | |

Petitioner Justin Mark brought a habeas petition under 28 U.S.C. § 2241 seeking application of earned time credits (TCs) under the First Step Act of 2018 (FSA) and immediate transfer to home confinement or a residential reentry center (RRC). Petition & Supp. Reply, Dkt. Nos. 1, 30. Respondents contend his petition is premature as he is not yet entitled to have his TCs immediately applied toward prerelease custody[1] or transfer to supervised release because the amount of TCs does not yet equal the remainder of his sentence. *See* 18 U.S.C. § 3624(g)(1)(A). The Court agrees with Respondents and recommends Mark's petition be denied.

In their supplemental filings to the Court,[2] the parties agreed Mark had earned 540 TCs and his projected release date (via a good conduct time release) was April 8, 2024.

---

[1] Home confinement and a residential reentry center are the two types of prerelease custody identified in the statute. 18 U.S.C. § 3624(g)(2).
[2] The Court ordered the parties to supplement because, while Mark's petition was pending, the January 15, 2022 deadline was reached for full implementation of the FSA TC provisions, and on January 19, 2022 the BOP issued its final rule, which repudiated a substantial portion of its earlier proposed rule's interpretations of the FSA, including how TCs are earned and applied. *See* 28 C.F.R. § 523.40-.44.

Supp. Response at 12, Dkt. No. 27; Second Winger Decl. ¶ 11, Dkt. No. 28; Pet.'s Supp. Reply at 2, 5, Dkt. No. 30.[3]

Application of TCs toward prelease custody is addressed in § 3632(d)(4)(C):

> (d) Evidence-based recidivism reduction program incentives and productive activities rewards. -- The System shall provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs as follows:
>
> \*\*\*
>
> (4) Time credits. --
>
> \*\*\*
>
> (C) **Application of time credits toward prerelease custody or supervised release.** -- Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities **shall be applied toward time in** prerelease custody or supervised release. The Director of the Bureau of Prisons **shall transfer eligible prisoners, as determined under section 3624(g)**, into prerelease custody or supervised release.

(Emphasis supplied.)

Section 3624(g) states the criteria for transferring a prisoner to either prerelease custody or supervised release based on TCs he has earned. It states, in relevant part:

> (g) Prerelease custody or supervised release for risk and needs assessment system participants. --
>
> (1) Eligible prisoners. -- This subsection applies in the case of a prisoner (as such term is defined in section 3635) who --
>
> (A) **has earned time credits** under the risk and needs assessment system developed under subchapter D (referred to in this subsection

---

[3] Although Mark asserts that the 540 days is "short of the actual days due," the additional days he refers to are "other incentives" and "awards and credits" provided by law. He does not argue that 540 is not an accurate calculation (as of the supplemental response date) of TCs he earned for FSA programming and activities.

>as the "System") **in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment**;
>
>\*\*\*

(Emphasis supplied.) TCs are not applied toward home confinement or an RRC until this benchmark is reached because TCs can be lost through disciplinary action. *See id.* § 3632(e); 28 C.F.R. § 523.43 (Loss of FSA Time Credits). They can also be restored on appeal or by discipline-free conduct for a period of time. 28 C.F.R. § 523.43(b) & (c). In addition, Mark's recidivism risk classification (his PATTERN score under the FSA assessment system) could increase between the present date and the date on which his TCs equal the remainder of his sentence, which would impact his eligibility to have TCs applied to his sentence. *See* 18 U.S.C. § 3624(g)(1)(B) & (D).[4]

Based on the record before the Court, it does not appear Mark has reached the date for applying his TCs toward immediate placement in home confinement or an RRC pursuant to the FSA. Deducting 540 days from his projected April 8, 2024 release date results in an adjusted release date of October 16, 2022. In other words, if nothing were to change between now and October 16, 2022, Mark would become eligible on that date for immediate placement in home confinement or an RRC under FSA. Further, the Court understands that the BOP will continue to update the relevant FSA computations, which may well result in an earlier placement date.

---

[4] A prisoner's recidivism risk is periodically reassessed "based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." 18 U.S.C. § 3632(a)(4).

Mark argues he is already eligible for immediate release because he is entitled to 180 days in addition to the 540 FSA TCs, citing the language in § 3624(c)(2). Pet.'s Supp. Reply at 2-4, Dkt. No. 30. That provision states:

(c) Prerelease custody. --

\*\*\*

(2) Home confinement authority. -- The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.[5]

However, by its terms this paragraph does not confer an additional credit of 180 days toward a prisoner's sentence, but rather addresses which prisoners should be placed on home confinement and for how long.

Much of the confusion surrounding the application of the FSA has arisen from the BOP's unfortunate and misguided (and now abandoned) initial interpretations of the FSA's provisions. *Compare* Proposed Rule on FSA Time Credits, 85 Fed. Reg. 75268-75273, 2020 WL 6889145 (Nov. 25, 2020) *with* Final Rule on FSA Time Credits, 87 Fed. Reg. 2705-2719, 2022 WL 159155 (Jan. 19, 2022) (including BOP responses to public comments and discussing changes incorporated into final rule). For example, the BOP initially posited that a "day" of successful participation in programming meant a prisoner must participate in eight hours of programming to equal one "day," whereas under the final rule a "day" is counted for each calendar day on which he participates in assigned

---

[5] The second sentence of paragraph (2) was added by the FSA. *See* Apr. 4, 2019 BOP Operations Mem. (Home Confinement under the First Step Act) at 1, Dkt. No. 31.

4

programming whether or not it lasts a full eight hours. Similarly, under the final rule a prisoner receives TCs for programming participated in since December 21, 2018, the date the FSA was enacted. Previously, the BOP only credited TCs for programming completed on or after January 15, 2020, the statutory deadline for assigning a risk level to every inmate under the FSA risk and needs assessment system. TCs are also earned for "participation" in programming instead of only after successful "completion" of a program or activity. And, the final rule also allows a prisoner to continue to earn TCs while in home confinement or RRC, whereas the BOP's previous position was that TCs could only be earned while in a BOP facility. Finally, the BOP initially determined it would not apply TCs until the January 2022 full implementation date, meaning that some prisoners would not have their TCs applied until after they were already released, effectively rendering the FSA meaningless for these prisoners.

Therefore, it appears to this Court that much of the confusion surrounding issues of release under the FSA has been created by the BOP and not by petitioners such as Mark. However, based on the record now before the Court on the parties' supplementation, the Court recommends that Mark's habeas petition be denied.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS that Justin Mark's habeas petition [Dkt. No. 1] be DENIED.

Dated: August 4, 2022              __s/David T. Schultz_____
                                   DAVID T. SCHULTZ
                                   U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).